**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Michael J. Aldous, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2015 cv 50145 |
| | ) | |
| City of Galena, a body politic and Municipal | ) | |
| Corporation in the State of Illinois, | ) | Hon. |
| Mark Moran, individually and in his official | ) | Judge Presiding. |
| capacity as Galena City Administrator, and | ) | |
| Terry Renner, individually and in his official | ) | Hon. |
| capacity as Mayor of Galena, and | ) | Magistrate Judge. |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Michael J. Aldous (hereafter sometimes simply referred to as "Plaintiff Aldous" or "Plaintiff"), by and through his attorneys, John P. De Rose & Associates, and complains of Defendants, City of Galena, a Municipal Corporation, Mark Moran, individually and in his official capacity as City Administrator, and Terry Renner, individually and in his official capacity as Mayor of the City of Galena, as follows:

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation of rights under color of law of Plaintiff's First Amendment rights secured under the United States Constitution and state law retaliatory discharge claims.

## JURISDICTION

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367. Plaintiff requests this Honorable Court to exercise supplemental jurisdiction over his state law retaliatory discharge claims which turn on an identical set of facts as his § 1983 claims, the same evidence will be used to prove all claims, and the same questions of fact are involved with all claims.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this judicial district.

4. Plaintiff requests this Honorable Court to exercise supplemental jurisdiction over his state law retaliatory discharge claims which turn on an identical set of facts as his § 1983 claims, the same evidence will be used to prove all claims, and the same questions of fact are involved with all claims.

## PARTIES

5. Plaintiff Michael Aldous is a 65-year-old resident of Galena, Illinois, and the former Plumbing Inspector and Rental Housing Inspector for Defendant City of Galena.

6. Defendant City of Galena is a body politic and a Municipal Corporation in the State of Illinois and at all relevant times was the employer of the individual parties to this proceeding.

7. Defendant Mark Moran is the City Administrator for Defendant City of Galena.

2

8. Defendant Terry Renner is the Mayor of the Defendant City of Galena.

9. The individual Defendants were at all relevant times acting under color of law and within the scope of their employment.

## STATEMENT OF FACTS

10. On May 28, 2013 Plaintiff Aldous was hired to be the Plumbing Inspector and, later in the year, also the Rental Housing Inspector for Defendant City of Galena.

11. As part of his job responsibilities as Plumbing Inspector for Defendant City of Galena, Plaintiff Aldous was required to:

> Insure that information provided by building permit applicants adequately portrays both technical and visual aspects of proposed work; Insure that proposals work will be done by the order, or a registered contractor, review applications as qualified for compliance with the codes adopted by the city of Galena. Current codes include: 2012 International Residential Code, 2012 International Building Code, 2012 International Mechanical Code, Illinois State Plumbing Code, 2011 National Electric Code, 2012 International Fire Code, 2012 International Energy Conservation Code and the 2012 International Fuel Gas Code.

> The Plumbing Inspector would be responsible for the administration and enforcement of any other codes with local jurisdiction that may be subsequently adopted by the City of Galena, the State of Illinois or the Federal Government.

12. As part of his job responsibilities as Plumbing Inspector for Defendant City of Galena, Plaintiff Aldous was further required to conduct inspections, insure code compliance, provide documentation to ensure proper enforcement of codes and record code violations within the corporate city limits of the City of Galena.

13. As part of his job responsibilities, Plaintiff Aldous was also the Rental Housing Inspector for Defendant City of Galena required to enforce all rental housing codes within the corporate city limits.

14. The Rental Housing Program for Defendant City of Galena consumed much of Plaintiff Aldous' time responding to phone messages from landlords and tenants, answering question on plumbing issues, and writing letters.

15. Plaintiff Aldous always performed his job responsibilities as Plumbing Inspector and as Rental Housing Inspector to the reasonable expectations of his employer, Defendant City of Galena.

16. As part of his responsibility in doing the plumbing inspections, Plaintiff Aldous was to test the City of Galena registered backflow preventer, a devise that prevents water from flowing back into the City water supply.

17. These backflow preventers are installed where required by the Plumbing code and are required to be tested annually.

18. Prior to hiring Plaintiff Aldous, the City of Galena had not had a Plumbing Inspector since 2007.

19. If and when a plumbing inspection was needed to be done, the State of Illinois Plumbing Inspector would be called to do the inspection.

20. Prior to hiring Plaintiff Aldous as Plumbing Inspector, Plumbing Contractors rarely got permits for the plumbing jobs completed within the City of Galena because their work was not going to be inspected.

21. When Plaintiff Aldous started to inspect plumbing jobs within the City of Galena, some of the Plumbing Contractors became upset because their work did not meet the State of Illinois Plumbing Code and they had to be redone.

22. Plaintiff Aldous was to make sure that any contractor registered as an excavating contractor to excavate in the public right of way for repairs to a building water service and/or sewer service had a labor and permit bond, both of which are required by City Ordinances.

23. The Labor and Permit Bond is a minimal cost and protects the City of Galena if the contractor damages any of the public utilities and did not repair the damage within the time limits of the bond.

24. Plaintiff Aldous repeatedly complained to the City Administrator, Defendant Mark Moran that plumbing permits were being issued without his review and no one checking that the contractor is properly registered with the State of Illinois Public Health, Plumbing Division.

25. The complaints by Plaintiff Aldous were unavailing, the system did not change, and Defendant Mark Moran merely commented that they needed to work with the contractors.

26. When Plaintiff Aldous reminded Defendant Mark Moran that he been hired to enforce the codes that had been adopted by the City of Galena and he wanted to do his job correctly, the conversations abruptly ended and he was summarily dismissed.

27. When Plaintiff Aldous did the Rental Housing Inspections and found deficiencies, landlords wanted to know why the deficiencies that he wrote up had passed earlier and now were being considered violations.

28. Plaintiff Aldous checked the files for these properties on past inspections reports and found that those violations he found had been previously passed.

29. Plaintiff Aldous mentioned this incongruous situation to Defendant Mark Moran who merely responded we have to work with the people.

30. Plaintiff Aldous continued to write deficiencies and citations during his inspections of rental properties throughout the City of Galena wherever and whenever he observed them.

31. Defendant Mark Moran became openly hostile to Plaintiff Aldous and complained that other staff members in the city of Galena, contractors, landlords, and tenants were complaining that Plaintiff Aldous knew the Building Codes too well and was enforcing them too strictly.

### A. Code Enforcement regarding the Veterinary Clinic

32. In 2013 a new veterinary clinic was being built by Veterinary Associates, within the corporate city limits of the City of Galena.

33. An oxygen system was being installed in the new veterinary clinic.

34. On July 24, 2013, Plaintiff Aldous conducted an inspection of the work progress on the new veterinary clinic being built at 1241 Franklin Street and noted the following violations concerning the rough-in underground plumbing:

Floor Drains need to be vented. Section 890.1370

Water Closet below grade needs to be vented. Section 890.1490(e).

35. At an October 2013 joint meeting at the worksite with the owners, trade companies, and the City of Galena Building, Electrical, and Plumbing Inspectors, question were raised about compliance with various Codes.

36. Plaintiff Aldous advised all who were present that the applicable Code required that the oxygen system to be installed in the new veterinary clinic would need to be inspected by a certified third-party company.

37. On or about March 3, 2014 Plaintiff Aldous conducted his inspection of the new veterinary clinic and determined that no inspection had been done of the newly installed oxygen system.

38. On March 10, 2014 Plaintiff Aldous conducted a Final Inspection of the work progress of the new veterinary clinic and noted the following violations:

> 1) install drainpipe from the air gap on RPZ to within 6 inches of the concrete floor;
> 2) need copy of data sheet on dog dental equipment;
> 3) need certificate number of the Oxygen Inspector for the inspection of the oxygen system;
> 4) record the pressure of the RPZ test on the card attached to the RPZ.

39. On March 21, 2014 Plaintiff Aldous conducted an additional inspection of the work progress of the new veterinary clinic being built within the corporate limits of the City of Galena and told the owner, Christy Morris that the applicable code required oxygen system be inspected by a licensed and certified Oxygen Inspector before occupancy.

40.     Plaintiff Aldous, in the presence of other building inspectors for Defendant City of Galena and Defendant Mark Moran, told the owner of the Veterinary Associates that for the health and safety of all concerned, including occupants of the building and residents in the surrounding neighborhood, the oxygen system must be inspected and approved by a licensed and certified Oxygen Inspector before occupancy could be had in the building.

41. Plaintiff Aldous was aware and in the exercise of his First Amendment Right to freedom of speech on matters of public concern advised Defendants and all members of the building trade with whom he came in contact and would listen to him that NFPA 99-2012: The Healthcare Facilities Code was completely rewritten in 2012 to change it from a "standard" to a "code" with which compliance was now mandatory.

42. The revised code required enhanced testing and maintenance that had not been previously required.

43. On the same day, March 21, 2014 Plaintiff Aldous signed on behalf of and in the absence of the Building Official, Duff Stewart , a Certificate of Occupancy granting only temporary occupancy in the new veterinary clinic on a "Special Condition: oxygen must be inspected and tested by a Certified Inspector".

44. On June 19, 2014 Brett Temperly, Fire Inspector of the Galena Fire Department sent a letter to Christy Moris of Veterinary Associates, stating as follows:

Re: Oxygen supply line inspection

This letter is to request verification on the installed oxygen system in the building. We have asked for this from the very beginning of construction. I have contacted the State Fire Marshal's Office to figure out what the system needs to abide by. Their response was the NFPA 99 Healthcare Facilities Code. I have also checked the International Fire Code. The IFC also states that medical gas systems shall comply with NFPA 99. I read NFPA 99 and I believe this system does need to be inspected and verified from an approved inspection company…. I am giving you 30 days to either have the system inspected or to have an inspection date set. If this is not done by 7-21-2014, I will ask the City to revoke your occupancy permit. This inspection should have been done before you moved into the new facility….

45. On July 8, 2014 Brett Temperly, the Fire Inspector for the Galena Fire

Department sent a letter to Fred Kuhl at Top-Notch Plumbing, stating as follows:

Re: Oxygen supply line inspection

This letter is a follow-up to request verification on the installed oxygen system in the Veterinary Associates building. The IFC code numbers I am using are listed below with the code.

5306.1 General. Compressed gases at hospitals and similar facilities intended for inhalation or sedation, including, but not limited to, analgesia systems for dentistry, podiatry, veterinarian and similar uses shall comply with Sections 5306.2 through 5306.4 in addition to other requirements of this chapter.

…

You have stated that you have read NFPA 99. Section 4.1.3 describes what category this system is. Then Section 5.3 Category 3 Piped Gas and Vacuum Systems is the code this installation needs to follow. So the work you have done needs to comply with this section of the code.

I am still giving you until 7-21-2014 to have this system inspected or to have an inspection date set. If this is not done, I will ask the city to pull their occupancy permit. This inspection needed to be done before the office open. …

46. On August 8, 2014 Fire Inspector Brett Temperly offered a variance from NFPA 99 to the owners of Veterinary Associates Building, stating as follows:

Re: Oxygen supply line inspection

This letter is a follow-up to the oxygen system test results. I have talked to Ed from Med Con on 8-7-14. We discussed the system and the code requirements that I was asking for. He stated that it was well designed. I asked him if the 2005 code allowed for a non-ASSE 6010 qualified person to install this system. His answer was no. I believe he said this changed in the 1999. So no matter what is done to the current system, it will never meet the code requirements. I am giving you three options on what I feel can be done now.

1) You can ask for a code variance on the installer qualifications section of the code. The alarms and monitors would need to be installed by someone ASSE 6010 qualified. The system would have to be re inspected after they are installed. This would also need full City staff approval, as well as the City attorney. This approval would be needed before any more work is done. There would also need to be some paperwork drawn up for this variance.

2) The system could be completely abandoned and use small oxygen tanks that could be left in the room. I am not sure how their current equipment works. So I am not sure if this is an option for them. They would have to talk to their supplier about this.

3) Completely tear out the current system and have it installed by a qualified ASSE 6010 company.

If you could discuss this with Christy and let me know what route you want to take. If you choose option 1, I will need to start working on the paperwork to give to the staff to review….

47. On August 8, 2014 Fire Inspector Brett Temperly sent a letter to the Galena City Staff advising about the variance from NFPA 99 and stating to the owners of the Veterinary Associates Building as follows:

Re: Vet clinic 02 system

10

I have sent a letter to Fred at Top-Notch this morning about the 02 system at Veterinary Associates. I have also talked to Ed from Med Con about this system. He wanted to know why we needed this system inspected since it was in a vet clinic. I explained to him that IFC referred us to NFPA 99 for this system. He did not know that this was the reason for the inspection…. Fred sent a reply today stating that they want to proceed with option #1. If we can work out option #1, I have no problems with this. Here are my reasons for accepting a variance:

1) Med Con inspector said it was a good system
2) If the alarms are installed as I am requiring, that will only make the system better
3) The system will need a final test to verify the code requirements for NFPA 99 except for a qualified installer
4) If the City did not have the IFC as a code to follow we would have no control over this system

I know #4 should not apply but if NFPA does not regulate it, at least we are. This is just my opinion. I want to hear from the rest of the City staff on this….

48. When he became aware of the foregoing reasons listed in Brett Temperly's letter, Plaintiff Aldous complained to all Defendants and City Building Inspectors that none of those stated reasons were sufficient to change the fact that the Oxygen System must be tested by a licensed and certified third party inspector.

49. On August 12, 2014 Plaintiff Aldous sent an email to Defendant Mark Moran, the City Administrator for Defendant City of Galena stating as follows:

…

I cannot support this variance for the following reasons:
➢ in October 2013 at a job meeting at the Veterinarian Associates, it was brought to Top-Notch Plumbing Company's attention that the oxygen pipe system would have to be inspected by a third-party company.
➢ The revised NFPA 99, Chapter 5 has been revised and [became] a code not a standard. Now it requires that the installer be a

qualified installer of Medical gas piping system, not simply the job foreman or supervisor.

➢ The City of Galena adopts any revised code by City ordinances. The NFPA 99 Code, Chapter 5 was rewritten in December 2011 and went into effect in 2012. If the City of Galena issues the variance, that action would make the City liable for the installation of the oxygen pipe. Therefore, if anything were to happen to the system, the City would be the one holding the bag.

Please see the attached copies of some of the chapter 5 revisions.

50. On September 12, 2014 Fire Inspector Brett Temperly emailed Plaintiff

Aldous indicating:

At the time I did not know that it fell under the fire code. I thought it was a building or state regulated issue. Mike Simmons was the individual inspector that reviewed the plans. I need this, and if someone could send me a PDF of the final plans, I want to see if anything was on the plans about this system. I am now the guy that will make the final call on this system. Just need to cover all of my bases in case this would end up in court.

51. On September 12, 2014 Plaintiff Aldous responded via email to Fire

Inspector Brett Temperly stating as follows:

The changes to the 2012 NFPA 99, Chapter 5 that I have read states that the installer of Category 3 Medical Gas pipe distribution system shall be certified in accordance with ASSE 6010 Professional Qualification Standard for Medical Gas System Installers. To my knowledge, if you complete the required course to become an installer and you are issued a certificate that certificate should have a number on it. In any case, then a copy of the certificate should be submitted to show that the installer is qualified to install the medical gas pipe system.

Back in October 2013 at the job meeting at the Vet Clinic, it was stated that the City of Galena needs a copy of the certificate number of the qualified person inspecting the system. I assume that you would have to be qualified to be able to inspect the installed system, which I would think that the inspector will ask to see the installer certificate.

I would want to make sure that the City of Galena has no liability for
not having the proper inspection report in their files.

52. Because Plaintiff voiced his objection to the proposed variation and the
hazards to heath it could cause, he received hostile treatment and retaliation from
Defendants.

53. Because Plaintiff Aldous would not and could not support the variance
being offered to the owners of the Veterinary Associates building because it was in
violation of NFPA 99-2012: The Healthcare Facilities Code, on September 15, 2014
Plaintiff was terminated by Galena City Administrator Mark Moran and Galena
Mayor Terry Renner .

54. After the termination of Plaintiff Aldous, on October 7, 2014 the City of
Galena gave Top-Notch Plumbing the variance concerning the Veterinary
Associates Building, even though it was in violation of NFPA 99-2012: The
Healthcare Facilities Code.

## B. Code Enforcement as Rental Housing Inspector

55. Plaintiff Aldous was also hired to be the Rental Housing Inspector for the
City of Galena.

56. Just as he had done as Plumbing Inspector for the City of Galena,
Plaintiff studied the appropriate codes that were to be followed with respect to
rental properties and insisted upon compliance with those rental codes to the best of
his ability.

57. As Plaintiff pursued his responsibilities as Rental Housing Inspector for
the City of Galena, when he would cite a code violation, he would often hear

complaints made by various building owners that they had always passed such inspections in the past.

58. Plaintiff Aldous did a rental housing inspection on a 6 unit apartment building at 433 North High Street in the City of Galena.

59. Plaintiff Aldous found a building code violation because the walls between the furnace rooms of each unit were breached into the front staircase of the building.

60. Plaintiff wrote the owner of the building many letters advising of the violation and that such a violation jeopardized the safety and health of all the occupants in the building.

61. On August 22, 2014 Plaintiff Aldous wrote the building owner:

> … Thank you for the information on the fire dampers that are installed on the breaching of the wall between the furnace rooms and the front stairway. In the International Building Code, transfer openings are not allowed to penetrate stairway and exit passageway enclosures, even with fire dampers (Section 717.5.2). Therefore, if fire/smoke dampers are installed with the listed smoke/carbon monoxide detector and the detector is monitored with an approved company, this would be acceptable with the City of Galena.
>
> In regard to the rear porch and stairway luminosity, you were to submit a signed proposal with the start date when the work will be done to install the lights for the porch and stairway on Friday, August 22, 2014. The City of Galena did not receive that proposal for that work. Therefore, a citation will be issued for that violation. In regard to the breaching of the walls between the furnace rooms and stairway, you need to submit a signed proposal with the start date for the work to begin. Along with the start date, we would require a city approved completion

date. The copy of the proposal will need to be submitted to the City of Galena by September 5, 2014.

Enclosed are copy sections of the International Building and Mechanical Code.

62. On September 12, 2014 plaintiff sent a second letter to the owner of the

building:

I received your email on September 5, 2014. It seems that we are getting nowhere with this code violation (breeching of a Fire Barrier Wall) in your building….

As you stated in your email of September 5, 2014, your rental apartment building at the above address was renovated sometime in 2000, it was in the late 1990's. After the renovation was completed and up to the time that you purchased the building, there were no violations regarding the above recorded. In April 2006 you had contacted the City of Galena Building Department by telephone concerning combustible makeup air for the room that houses the hot water heater and the furnace. Apparently you were having a problem with the combustible makeup air for one room or rooms that house the hot water heater and the furnace. A copy of the International Mechanical Code regarding Air from Adjustment Spaces was faxed to you on April 19, 2006.

As it stands, your building is in violation of Section 717.5.2 of the International Building Code. A copy of the code was sent to you, which you acknowledged in your email on September 5, 2014.

As stated in my letter sent to you, the City of Galena would accept the installation of fire/smoke dampers that are activated by a detector that is activated by fire, smoke, or carbon monoxide in the furnace rooms. The detector has to be monitored so when the detector is activated, a signal is sent to a company that will notify the Fire Department, or if the detector is activated have the activated signal go directly to the Fire Department. The Fire Department will decide how the signal will be sent.

> Therefore, enclosed is a citation regarding 71 7.5.2 of the
> International Building Code. The judge will decide you
> need to comply with the code.

63. In December 2014 Plaintiff was advised by Robert Brotheridge, Galena Electrical Inspector that the City of Galena had agreed upon a compromise to correct the violation.

64. The compromise was that the building owner would cut grills into the door of the furnace room in each unit.

65. Because the doors were between the living space of each unit and the furnace room, this compromise continued to be a violation as it did not allow for the required one hour fire separation rating between the furnace room and the living space.

66. Plaintiff voiced his objection to this suggested compromise and received hostile treatment and retaliation from Defendants.

## C. Code Enforcement for the Renovation
## Of the Old City Hall for the Police Department

67. In 2014 Defendant City of Galena decided to renovate the Od City Hall for use by the Galena Police Department.

68. When the renovation plans were submitted to Defendant City of Galena for review, Plaintiff Aldous was never asked to review the plans before they were sent out for bid.

69. Plaintiff Aldous first became aware of the plans for the renovation when a local plumbing contractor stopped in to his office to ask why the washrooms were not being renovated to ADA specifications and requirement standards.

70. Plaintiff Aldous could not answer the inquiry because he had not been advised of and had never seen any renovation plans.

71. At the request of Plaintiff Aldous, Galena City Engineer Andy Lewis came out to talk to the plumbing contractor.

72. The City Engineer told the plumbing contractor in the presence of Plaintiff to "bid the plan as is" and not to worry about any Federal ADA Building Code.

73. Plaintiff Michael Aldous, armed with a copy of the 2010 ADA Standards for Accessible Design, published by the Department of Justice, immediately went in to see Defendant Mark Moran, the City Administrator and to advise that it was his duty to point out that the washrooms needed to be brought up to the Federal ADA Code which went into effect in 2012.

74. Plaintiff pointed out to Defendant Mark Moran that the 2010 ADA Standards for Assessable Design contains the following language:

> Compliance Date for Title II
>
> if the start date for construction is on or after March 15, 2012, all newly constructed or altered State and local government facilities must comply with the 2010 Standards.

75. Defendant Mark Moran became very upset with Plaintiff and heatedly complained that the architect would know about the code requirements when he drew up the plans.

76. The renovation on the Police Department continued throughout 2014 and 2015.

77. On or about September 11, 2014, Galena Building Inspector Duff Stewart and Galena Electrical Inspector Robert Brotheridge got into another heated discussion with Plaintiff Aldous about his insistence that the renovated washrooms had to be ADA Code compliant.

78. Robert Brotheridge and Duff Stewart contended that although the two washrooms on the 2nd floor of the building were the primary washrooms, a wheelchair would be able to turn around in each of them.

79. Plaintiff Aldous advise them that since the two washrooms were the primary washrooms in the building, the Federal ADA Code required certain room measurements and that the measurements of the existing washrooms did not meet those requirements.

80. The following day, Defendant Mark Moran asked Plaintiff Michael Aldous to step into Duff Stewart's office.

81. In the presence of Duff Stewart, City Administrator Mark Moran asked Plaintiff to resign as Plumbing Inspector and as Rental Housing Inspector for Defendant City of Galena.

82. Defendant Mark Moran contended that Plaintiff "was too quick with the codes and he was making other Galena inspectors uncomfortable".

83. Plaintiff Aldous told Defendant Mark Moran in the presence of Duff Stewart that he was just doing his job as required by the law, he would not and could not look past code violations, his enforcement of the codes was the requirement of his job, and he would not resign.

84. Before Plaintiff was summarily dismissed from the heated meeting, Defendant Mark Moran, the Galena City Administrator said, "I will talk to the Mayor on Monday and I will let you know what we have decided about your future as an employee of the City of Galena."

85. On Monday morning, September 15, 2014 while working from his desk, Plaintiff Observed Defendants Mark Moran and Terry Renner enter the offices of the Galena City Attorney.

86. Upon exiting the office of the Galena City Attorney at approximately 11:30 AM, Defendant Mark Moran immediately called Plaintiff into the Office of the City Administrator and terminated him with the statement, "I have talked with the City Attorney and the Mayor. Your strict enforcement of the codes has upset other City Inspectors, Galena property owners, and tradesmen in the community. Your employment as an Inspector for the City is just not working out with us. Your employment is ended, effective immediately."

87. At its January 2015 meeting, the Galena City Council approved a change order for the expansion and remodeling of the restrooms in the renovated Galena

Police Department to meet ADA requirements, increasing the total cost for the renovations by $14,787.

88.    At that January 12, 2015 Council meeting, one of the council members questioned why the renovation of the bathrooms was not included in the original bid that the Council had approved.

89. Defendant Mark Moran explained that the emphasis had originally been on "saving money on the project".

90. In passing on the renovated Galena Police Department to meet ADA requirements, the Council agreed, "It would be best to do the restrooms at the same time as the rest of the project and have them done right."

91. On Monday, February 23, 2015 Plaintiff met with Duff Stewart the Galena Building Inspector in his office in the Galena City Hall and was told that the reason why he was terminated from his employment with Defendant city of Galena was because he would not support the variances that were offered to the installation contractor on the oxygen system for the veterinary clinic and because of the brouhaha plaintiff was making over in the lack of ADA compliant restrooms being renovated for the Galena Police Department.

**Count I**
**42 U.S.C. § 1983**
**Retaliation in Violation of the First Amendment**
**Freedom of Speech**

92. Plaintiff repeats and re-alleges Paragraphs 1 to 91 of this Complaint as Paragraphs 1 to 91 of this Count I as if restated fully herein.

93. The First Amendment to the United States Constitution guarantees Plaintiff's right to speak on matters of public concern without fear of unjust retaliation.

94. Plaintiff engaged in protected speech on matters of public concern in reporting both to his Employer and to the citizens of the City of Galena his concerns that appropriate Federal, State, and Local Building Codes be followed for the health and safety of the citizens of the community.

95. Plaintiff's insistence that appropriate Federal, State, and Local Building Codes must be followed for the health and safety of the citizens of the community was a substantial or motivating factor in the adverse employment decision against him and by the individually named Defendants and the

96. Plaintiff had a protected property interest in his employment with the City of Galena, in a position that does not require political affiliation, or adherence to any particular viewpoints or associations related to public policy.

97. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered injury, including the loss of his employment, damage to his reputation, great emotional distress and grave financial losses due to the loss of his employment.

98. Plaintiff has suffered and continues to suffer from severe emotional distress from the injuries caused to him by the violation of his constitutional rights and his employment termination as set forth above.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants and each of them, jointly and severally, as follows:

a. Judgment for compensatory damages in favor of Plaintiff against Defendant in an amount in excess of $1,000,000.00;

b. Punitive damages from Defendants in an amount in excess of $1,000,000.00;

c. Reasonable attorney's fees;

d. Costs of this suit; and

e. Such other relief as may be proper and just.

## Count II
## 42 U.S.C. § 1983
## *Monell* Policy Claim

99. Plaintiff repeats and re-alleges Paragraphs 1 to 98 of this Complaint as Paragraphs 1 to 98 of this Count II as if restated fully herein.

100. The actions of all the individually named Defendants were done pursuant to policies and practices of the City of Galena, described above, which were ratified by policymakers for the City of Galena with final policymaking authority.

101. The practices of the Defendants include the failure to adequately train, supervise, and discipline employees who engaged in the constitutional violations alleged above.

102. Following its long-standing practice, the City of Galena failed to adequately train, supervise, and discipline its employees who engaged in the constitutional violations alleged above.

103. These practices included creating and then failing to enforce local, state, and federal laws and codes and punishing employees when they sought to enforce such laws.

104. The Defendants selectively and strictly enforced policies against Plaintiff, disregarded progressive discipline, failed to issue proper verbal or written warnings, opting instead to build a disciplinary case out of thin air.

105. The policies and practices described in this Count were maintained and implemented by the City of Galena with deliberate indifference to Plaintiff's constitutional rights.

106. The City of Galena, City Administrator Mark Moran, City Mayor Terry Renner have final policymaking authority in the City of Galena.

107. Plaintiff has suffered and continues to suffer from severe emotional distress from the injuries caused to him by the violation of his constitutional rights and his employment termination as set forth above.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants and each of them, jointly and severally, as follows:

    a. Judgment for compensatory damages in favor of Plaintiff in an amount in excess of $1,000,000.00;

    b. Punitive damages in an amount in excess of $1,000,000.00;

    c. Reasonable attorney's fees;

    d. Costs of this suit; and

    e. Such other relief as may be proper and just.

## Count III
## Retaliatory Discharge at Common Law

108. Plaintiff repeats and re-alleges Paragraphs 1 to 107 of this Complaint as Paragraphs 1 to 107 of this Count III as if restated fully herein.

109. The common-law tort of Retaliatory Discharge is an exception to employment at will under Illinois law.

110. The termination of Plaintiff Aldous by Defendants in retaliation for his activities in enforcing the appropriate Federal, State, and Local Building Codes in order to ensure the health and safety of the citizens of the community violates a clear mandate of public policy.

111. Under Illinois common law, the retaliatory-discharge tort is available to Plaintiff Aldous whose enforcement of appropriate Federal, State, and Local Building Codes and whistleblowing activities in conjunction with that enforcement lead to the termination of his employment.

112.    As a direct and proximate result of the actions of Defendants in terminating Plaintiff's employment, Plaintiff suffered and continues to suffer damages from the injuries caused to him as set forth above.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants and each of them, jointly and severally, as follows:

a. Judgment for compensatory damages in favor of Plaintiff in an amount in excess of $1,000,000.00;

b. Punitive damages in an amount in excess of $1,000,000.00;

c. Reasonable attorney's fees;

d. Costs of this suit; and

e. Such other relief as may be proper and just.

## IV. Retaliatory Discharge Violating
## Illinois Whistleblower Act

113. Plaintiff repeats and re-alleges Paragraphs 1 to 112 of this Complaint as Paragraphs 1 to 112 of this Count IV as if restated fully herein.

114. Plaintiff refused to grant approval of building projects in the City of Galena that were clearly in violation of appropriate Federal, State, and Local Building Codes.

115. Plaintiff reported the building code violations to Defendants who were in decision-making positions and responsible for enforcing the appropriate Federal, State, and Local Building Codes in the City of Galena.

116. Plaintiff was obliged by both his job description as City Plumbing Inspector and public policy to report to defendants building code violations within the corporate limits of the City of Galena.

117. It is clearly mandated public policy in the State of Illinois that as City Plumbing Inspector that Plaintiff not participate in any activities that would circumvent the appropriate Federal, State, and Local Building Codes.

118. The Illinois Whistleblower Act prohibits retaliation against an employee for refusing to participate in activity that would result in violation of state or federal law, rule, or regulation. S.H.A. 740 ILCS 174/20.

119. The retaliatory discharge of Plaintiff by Defendants violates the Illinois Whistleblower Act.

120.    As a direct and proximate result of the actions of Defendants in terminating Plaintiff's employment, Plaintiff suffered and continues to suffer damages from the injuries caused to him as set forth above.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants and each of them, jointly and severally, as follows:

a. Judgment for compensatory damages in favor of Plaintiff in an amount in excess of $1,000,000.00;

b. Punitive damages in an amount in excess of $1,000,000.00;

c. Reasonable attorney's fees;

d. Costs of this suit; and

e. Such other relief as may be proper and just.

## Count V
## Intentional Infliction of Emotional Distress

121.    Plaintiff repeats and re-alleges Paragraphs 1 to 120 of this Complaint as Paragraphs 1 to 120 of this Count IV as if restated fully herein.

122.    The actions of the Defendants were extreme and outrageous.

123.    The Defendants actions were done in consort and conspiracy to intentionally and maliciously cause severe emotional distress to Plaintiff.

124.    Defendants knew or reasonably should have known that their actions had a high probability of causing severe emotional distress to Plaintiff.

125.    Defendants actions were intentional and malicious and demonstrated a willful and wanton disregard for the rights of Plaintiff and had a high probability of causing great emotional distress to him.

26

126.     Plaintiff has suffered and continues to suffer from severe emotional distress from the injuries caused to him by the violation of his constitutional rights and his employment termination as set forth above.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants and each of them, jointly and severally, as follows:

a. Judgment for compensatory damages in favor of Plaintiff in an amount in excess of $1,000,000.00;

b. Punitive damages in an amount in excess of $1,000,000.00;

c. Reasonable attorney's fees;

d. Costs of this suit; and

e. Such other relief as may be proper and just.

Respectfully Submitted,

_____

John P. DeRose,
Attorney for Plaintiff

John P. DeRose & Associates
15 Spinning Wheel Drive
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com